CLERK'S OFFICE U.S. DIST. COURT
AT HARRISONBURG, VA
FILED

March 19, 2026

LAURA A. AUSTIN, CLERK
BY: s/J.Vasquez
DEPUTY CLERK

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION**

| | | |
|---|---|---|
| **RODNEY M. POWELL,** | ) | |
| **Plaintiff,** | ) | **Case No. 7:24-cv-00078** |
| | ) | |
| **v.** | ) | |
| | ) | **By: Michael F. Urbanski** |
| **THE ESTATE OF SGT. DAVIS, et al.,** | ) | **Senior United States District Judge** |
| **Defendants.** | ) | |

### MEMORANDUM OPINION

Rodney M. Powell, a state inmate proceeding pro se, filed this civil action under 42 U.S.C. § 1983. Powell claims that correctional officers at River North Correctional Center (RNCC) violated the Eighth Amendment by allowing a canine to bite him. The case is presently before the court on a motion for summary judgment filed by the remaining defendants, the Estate of N. Davis and Officer D. Loggins. ECF No. 31. Powell has not responded to the motion, and the time for doing so has expired. For the following reasons, the motion for summary judgment is **GRANTED**.

### I.    Background

#### A.    Powell's Verified Pleadings

The events giving rise to this action occurred on the morning of June 24, 2023. Compl., ECF No. 1, at 2. Shortly after 10:00 a.m., Powell and another inmate exited a building to obtain a food cart. Id. at 2. At the same time, Davis and his assigned canine were in an enclosed recreation yard in close proximity to the building. Powell alleges that Davis was standing approximately 20 feet away and that "his dog [was] standing at the gate (NOT on a leash)." Id. at 3. As Powell and the other inmate exited the building, Loggins, a control

room officer, opened the gate to the recreation yard. Id. At that time, the dog ran out and bit

Powell on his right knee. Id.

Powell claims that Davis, who died before the action was filed, violated his Eighth

Amendment right to be free from cruel and unusual punishment by "releasing [his canine]

off of the leash" in violation of "department rules." Am. Compl., ECF No. 8, at 3. Powell

claims that Loggins violated the Eighth Amendment by opening the gate to the recreation

yard from the control room and thereby allowing Davis's canine to bite him. Id. at 2. Powell

seeks to recover monetary damages from the defendants. Id. at 4.

## B.    Defendants' Evidence

In support of their motion for summary judgment, the defendants submitted

affidavits, internal incident reports, medical records, and preserved surveillance footage. See

ECF Nos. 32 and 33.

The defendants' evidence indicates that Davis entered the recreation yard with Brix,

his assigned canine, at approximately 9:55 a.m. on June 24, 2023, to conduct off-leash

obedience training. Garrettson Aff. ¶ 5, Encl. A, ECF No. 32-1. According to Sergeant G.

Garrettson's affidavit, it was standard practice at the time of the incident for canine officers

to do off-leash training with their assigned canines in empty yards at the correctional facility.

Garrettson Aff. ¶ 4. Canine officers were supposed to inform the control room officer when

they were going to be training and when they had completed their training. Id. "During

training, the control booth officer was not to allow any inmates in the area in which training

was being conducted for the safety of the inmates." Id.

2

After Davis entered the yard with his canine, he asked for the yard to be secured for canine training. Loggins Aff. ¶ 4, ECF No. 32-2. Approximately ten minutes later, inmate workers, including Powell, exited the building to retrieve carts. Id. Loggins asserts in his affidavit that he looked through a window in the control booth and did not see Davis or the canine. Id. ¶¶ 4–5. Consequently, he "assumed the yard was clear and unlocked the gate for the workers to enter," which caused the gate to swing open. Id. ¶ 4 & n.1. Loggins then heard yelling and saw the canine running out of the gate. "The dog made contact with an inmate but stopped and returned on command from Officer Davis." Id. ¶ 4.

Incident reports prepared by Davis indicate that as soon as he heard the gate open, he "began giving multiple verbal commands to Canine Brix to 'Stand Still.'" Garretson Aff. Encl. A. The reports indicate that the canine complied with Davis's commands and that Davis recalled the canine and secured him to his leash. Id.

Powell was subsequently taken to the medical department for evaluation and treatment. Medical staff observed a "1 x 1 cm laceration" on Powell's right knee that "was not bleeding at the time." Reaves Aff. ¶ 4 & Encl. A, ECF No. 32-3. The wound was cleaned and bandaged, and Powell was given a Tdap injection and an antibiotic ointment to apply for five days. Id. Following an examination three days later, medical staff noted that Powell's wound was healing well. Reaves Aff. ¶ 5 & Encl. A.

The court has reviewed the surveillance footage submitted by the defendants. One video, labeled RNCC-062423-1012457-2, begins at 9:45:00 and shows inmates in an enclosed yard. The yard apparently has more than one entrance, and the camera does not capture the entire yard. At 9:47:03, an officer exits the adjacent building and motions for the inmates to

come inside. The last inmate leaves the yard, closes the gate, and enters the building at 9:48:18. No further movement is shown in the footage until 10:00:30. At that time, a canine can be seen running across the yard, followed by Davis. A few minutes later, at 10:04:25, the canine reappears on camera and can be seen standing near the gate closest to the building. At 10:05:06, the canine approaches the gate at the same time that Powell exits a nearby door and moves toward the gate. At 10:05:11, the gate begins to open, and Powell backs up closer to the building. At 10:05:13, the canine exits the gate and runs toward Powell. Davis then immediately runs toward the gate. At 10:05:17, the canine turns around and runs back into the yard. Davis then takes hold of the canine's leash and closes the gate. At 10:08:21, while Davis continues to hold onto the canine's leash, Powell and another officer exit the building, enter the yard, and walk past Davis and the canine. Davis and the canine then walk in the same direction out of the view of the camera.

The second video, labeled RNCC-062423-1012457-1, contains footage from a camera pointed in the direction of the door to the building next to the yard. At 10:05:05, Powell and another inmate exit the building. Approximately six seconds later, the gate to the yard begins to open, and the other inmate goes back in the building while Powell backs up toward the building. At 10:05:14, the canine exits the yard through the gate and runs toward Powell. Approximately three second later, the canine turns around and runs back through the gate. Powell remains outside the building until 10:05:40, when the other inmate opens the door for him to reenter the building. The other inmate stands in the doorway holding the door open. Another officer appears in the view of the camera at 10:06:21 and walks into the building. The other inmate closes the door and walks away at 10:07:10. Approximately one

minute later, the building door opens, and Powell and an officer exit the building and enter the yard through the gate.

In his affidavit, Loggins indicates that he reviewed the surveillance footage submitted in support of the defendants' motion and that he did not see the canine standing near the gate when he looked through a control room window before unlocking the gate. Loggins Aff. ¶ 5. Loggins maintains that if he had been aware that the canine was near the gate, he would not have unlocked the gate until the canine had been secured. Id. ¶ 5.

## II.    Standard of Review

The defendants have moved for summary judgment under Rule 56 of the Federal Rules of Civil Procedure. The court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute is genuine if 'a reasonable jury could return a verdict for the nonmoving party.'" Libertarian Party of Va. v. Judd, 718 F.3d 308, 313 (4th Cir. 2013) (quoting Dulaney v. Packaging Corp. of Am., 673 F.3d 323, 330 (4th Cir. 2012)). "A fact is material if it 'might affect the outcome of the suit under the governing law.'" Id. (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248–49 (1986)).

When ruling on a motion for summary judgment, the court must "view the facts and all justifiable inferences arising therefrom in the light most favorable to the nonmoving party." Id. at 312. The court may not "weigh the evidence or make credibility determinations." Jacobs v. N.C. Admin. Office of the Courts, 780 F.3d 562, 568 (4th Cir. 2015). "To survive summary judgment, 'there must be evidence on which the jury could

reasonably find for the nonmovant.'" Lee v. Town of Seaboard, 863 F.3d 323, 327 (4th Cir. 2017) (brackets omitted) (quoting Anderson, 477 U.S. at 252).

"As a general rule, when one party files a motion for summary judgment, the nonmovant cannot merely rely on matters pleaded in the complaint, but must, by factual affidavit or the like, respond to the motion." Williams v. Griffin, 952 F.2d 820, 823 (4th Cir. 1991). "However, it is well-established that a verified complaint is the equivalent of an opposing affidavit for summary judgment purposes, when the allegations contained therein are based on personal knowledge." Goodman v. Diggs, 986 F.3d 493, 498 (4th Cir. 2021) (internal quotation marks omitted); see Fed. R. Civ. P. 56(c)(4) ("An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated."). Nonetheless, conclusory allegations in a verified complaint are insufficient to survive summary judgment. See Dash v. Mayweather, 731 F.3d 303, 311 (4th Cir. 2013) ("Although the court must draw all justifiable inferences in favor of the nonmoving party, the nonmoving party must rely on more than conclusory allegations, mere speculation, the building of one inference upon another, or the mere existence of a scintilla of evidence.").

### III.    Discussion

Powell claims that Davis and Loggins violated his rights under the Eighth Amendment. "The Eighth Amendment, which is applicable to the States through the Fourteenth Amendment, prohibits the infliction of 'cruel and unusual punishments.'" Anderson v. Kingsley, 877 F.3d 539, 543 (4th Cir. 2017). The Supreme Court has held that

6

the Amendment protects inmates from the "unnecessary and wanton infliction of pain." Estelle v. Gamble, 429 U.S. 97, 103 (1976) (internal quotation marks omitted). "That protection imposes on prison officials an affirmative 'obligation to take reasonable measures to guarantee the safety of . . . inmates.'" Thompson v. Commonwealth, 878 F.3d 89, 98 (4th Cir. 2017) (alteration in original) (quoting Whitley v. Albers, 475 U.S. 312, 319–20 (1986)). "However, not all Eighth Amendment violations are the same: some constitute 'deliberate indifference,' while others constitute 'excessive force.'" Id. (quoting Whitley, 475 U.S. at 319–20).

Powell does not specify whether his Eighth Amendment claims are based on a theory of excessive force or deliberate indifference. Consequently, the court will address both theories of liability.

**A.     Excessive Force**

A claim of excessive force in violation of the Eighth Amendment has both an objective and a subjective component. Dean v. Jones, 984 F.3d 295, 302 (4th Cir. 2021). "The objective component measures the nature of the force employed, asking whether that force 'was sufficiently serious to establish a cause of action.'" Id. (quoting Brooks v. Johnson, 924 F.3d 104, 112 (4th Cir. 2019)). "This is not a high bar; de minimis or trivial force is not enough but anything more will suffice." Id.

"The more demanding part of the test . . . is the subjective component, which asks a single question: whether the officers acted with a 'sufficiently culpable state of mind.'" Id. (quoting Williams v. Benjamin, 77 F.3d 756, 761 (4th Cir. 1996)). The state of mind required is "wantonness in the infliction of pain." Brooks, 924 F.3d at 112 (internal quotation marks

omitted). "Whether an inmate can establish that impermissible motive turns on 'whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm.'" Dean, 984 F.3d at 302 (quoting Whitley, 475 U.S. at 320-21). To rise to the level of cruel and unusual punishment, an officer's conduct "must involve more than ordinary lack of due care for the prisoner's interests or safety." Whitley, 475 U.S. at 319. Likewise, an accidental deployment of force does not suffice. See Redmond v. Crowther, 882 F.3d 927, 937 (10th Cir. 2018) ("[A]ccidentally deploying force is antithetical to deploying that force maliciously or sadistically."); c.f. Kingsley v. Hendrickson, 576 U.S. 389, 396 (2015) (noting, for purposes of a pretrial detainee's claim of excessive force under the Fourteenth Amendment, that "if an officer's Taser goes off by accident or if an officer unintentionally trips and falls on a detainee, causing harm, the pretrial detainee cannot prevail on an excessive force claim"). Instead, on summary judgment, there must be evidence from which "a reasonable jury could determine that an officer acted with malice, applying force punitively and 'for the very purpose of causing harm.'" Dean, 984 F.3d at 302 (quoting Whitley, 475 U.S. at 320–21).

Here, the record is devoid of evidence from which a reasonable jury could find that Davis or Loggins acted with the state of mind necessary to satisfy the subjective component. As reflected above, the evidence reveals that Davis was training his canine off leash in the enclosed yard when the gate was unlocked by Loggins and swung open, at which time the canine ran through the gate and bit Powell. There is no evidence that Davis had any inkling that the gate would be opened during the training session, much less that he intentionally allowed the canine to exit the gate and make contact with Powell. Instead, the evidence

reflects that as soon as Davis heard the gate open, he immediately ran toward the gate and gave the canine commands to stop, and the canine quickly turned around and returned to Davis. Likewise, there is no evidence to suggest that Loggins unlocked the gate "with a knowing willingness that harm occur," Farmer v. Brennan, 511 U.S. 825, 836 (1994) (internal quotation marks and brackets omitted), or "for the very purpose of causing harm," Whitley, 475 U.S. at 321. Instead, the undisputed evidence indicates that Loggins mistakenly assumed that the yard was clear when he unlocked the gate to allow inmates to enter the yard. While that assumption proved to be incorrect, mere inadvertence or even negligence does not rise to the level of an Eighth Amendment violation. See Whitley, 475 U.S. at 319 ("It is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishment Clause . . . ."); Ford v. Hooks, 108 F.4th 224, 231 (4th Cir. 2024) ("[Plaintiff's] argument . . . amounts, at most, to one that the official's responses were 'unreasonable' because there was more that they could have done. But such negligence is not enough to make an Eighth Amendment claim."). Accordingly, to the extent Powell claims that the defendants used excessive force against him in violation of the Eighth Amendment, the defendants are entitled to summary judgment.

**B.    Deliberate Indifference**

The deliberate indifference standard of the Eighth Amendment "generally applies to cases alleging failures to safeguard the inmate's health and safety, including failing to protect inmates from attack . . . ." Thompson, 878 F.3d at 97. A claim of deliberate indifference also has an objective and a subjective component. King v. Riley, 76 F.4th 259, 264 (4th Cir. 2023). First, an inmate "'must establish a serious deprivation of his rights in the form of a

serious or significant physical or emotional injury,' or a substantial risk thereof." <u>Raynor v. Pugh</u>, 817 F.3d 123, 127 (4th Cir. 2016) (quoting <u>Danser v. Stansberry</u>, 772 F.3d 340, 346–47 (4th Cir. 2014)). Second, the inmate must show that a correctional official "knew of and disregarded an excessive risk to inmate health or safety." <u>Danser</u>, 772 F.3d at 347. In other words, deliberate indifference "requires proof that the prison official subjectively knew of the substantial risk of harm to a prisoner and consciously disregarded it." <u>Ford</u>, 108 F.4th at 229 (internal quotation marks omitted). This is a "very high standard," which is not met by a showing of mere negligence. <u>Id.</u> at 230 (internal quotation marks omitted).

Applying these principles, the court concludes that the defendants are entitled to summary judgment on any claim of deliberate indifference. Even assuming that the injury or risk of injury was sufficiently serious to satisfy the objective component, no reasonable jury could find from this record that Davis or Loggins consciously disregarded an excessive risk to Powell's health or safety. With respect to Davis, the evidence reflects that the yard was empty when he entered it with his canine and that he asked that it be secured for off-leash training. There is no evidence that Davis had any reason to believe that the gate would be opened while his canine was loose. Additionally, the incident reports and surveillance footage reflect that Davis immediately ran toward the gate after it opened and that he recalled the canine within a few seconds of the canine making contact with Powell. To the extent Powell alleges that Davis violated department rules by allowing the canine to run unleashed in the first place, a mere violation of prison policy, even assuming one occurred, "does not amount to deliberate indifference." <u>King</u>, 76 F.3d at 267; <u>see also</u> <u>Rich v. Bruce</u>, 129 F.3d 336, 339 (4th Cir. 1997) (holding that an officer was not deliberately indifferent

10

despite knowingly violating prison regulations). Likewise, "it takes 'more than a generalized awareness of risk to make out a deliberate-indifference claim.'" Owens v. Sec'y of Fla. Dept. of Corr., 812 F. App'x 861, 868 (11th Cir. 2020) (quoting Marbury v. Warden, 936 F.3d 1227, 1234 (11th Cir. 2019)). Fourth Circuit precedent "makes clear that officials can be liable under the deliberate indifference standard only to the extent that they actually appreciated the risk factors in a given case, and only to the extent that they make the causal inference that the circumstances as they perceived them created a substantial risk of harm." Parrish v. Cleveland, 372 F.3d 294, 305 (4th Cir. 2004).

There is also insufficient evidence to establish that Loggins subjectively recognized that a substantial risk of harm existed and that his actions were inappropriate in light of that risk. Id. at 303. Although Loggins knew that Davis had entered the yard with his canine for training around 9:55 a.m., Loggins's affidavit indicates that he did not see them approximately ten minutes later, when he unlocked the gate for inmate workers, and therefore did not know that the canine posed a danger to Powell or any other inmate at that time. While one could argue that more "could or should have been done" to ensure that the yard was clear or that Powell's canine was secured, "[t]hat is the language of negligence," not deliberate indifference. Koon v. North Carolina, 50 F.4th 398, 406 (4th Cir. 2022). "The Supreme Court has clearly articulated that 'an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation,' does not amount to the requisite subjective knowledge of a substantial risk." Carmona v. City of Brownsville, 126 F.4th 1091, 1097 (5th Cir. 2025) (quoting Farmer, 511 U.S. at 838); see also Ford, 108 F.4th at 230 ("It is not enough that the prison official should have recognized the

risk and the inadequacy of his response. Instead, the official 'actually must have perceived' both.") (quoting <u>Parrish</u>, 372 F.3d at 302).

In short, Powell has not presented evidence from which a reasonable jury could find that Davis or Loggins consciously disregarded a substantial risk to his health or safety. Accordingly, to the extent Powell claims that Davis and Loggins acted with deliberate indifference in violation of the Eighth Amendment, the defendants are entitled to summary judgment.

## IV.    Conclusion

For the reasons stated, the defendants' motion for summary judgment, ECF No. 31, is **GRANTED**. An appropriate order will be entered.

Entered: March 18, 2026

Michael F. Urbanski
U.S. District Judge
2026.03.18 17:08:11
-04'00'

Michael F. Urbanski
Senior United States District Judge